Order of disposition, Family Court, New York County (Allen G. Alpert, J.), entered on or about January 17, 2012, which adjudicated appellant a juvenile delinquent upon a fact-finding determination that he committed acts that, if committed by an adult, would constitute two counts each of the crimes of sexual *711 abuse in the second and third degrees and forcible touching, and placed him on probation for a period of 12 months, reversed, on the law, the facts and as an exercise of discretion in the interest of justice, without costs, the first, third, and fifth counts of the petition dismissed, the delinquency finding and dispositional order vacated, and the matter remanded to Family Court with a direction to order an adjournment in contemplation of dismissal pursuant to Family Court Act § 315.3 (1) nunc pro tunc to January 17, 2012.
Although the trial court made no specific findings of fact, the record reveals that the complaining witness testified that on October 18, 2010 at approximately 11:45 a.m., she went to the main office where she and appellant attended school. She saw appellant inside. On the day of the occurrence, the complaining witness was 13 years old and appellant was 12 years old. Although she and appellant had mutual friends, they had not previously talked to each other until that day when, in the school office, he asked her to be his girlfriend. The complaining witness testified she ignored his request and then left the office by herself. Another witness, a paraprofessional assigned to the complaining witness, testified that she observed the two children talking casually in the office and that they left the office together, still engaged in conversation.
It is not disputed that while the complaining witness and appellant were in the public hallway, appellant grabbed her from behind. No one else was in the hallway at the time. The other students were expected to return shortly to their classrooms from the lunch break. The complaining witness testified that appellant “dragged” her down the hallway, explaining that he had grabbed her backpack which stayed between them and that she struggled to shrug it off her back, but was held back by his tugging down on it. Her feet never left the ground. As she tried to get away, appellant reached around and “touched” and “squeezed” both of her breasts and the right side of her buttocks. He also attempted to kiss her and ignored her as she told him, “I need to go to class. I don’t like you. No.” It was then that appellant asked the complaining witness for “a hug or anything and I’ll let you go.” She hugged appellant just to get away from him and then went directly to her math class down the hall, where she sat, upset. When her paraprofessional entered the room, she explained what had happened in the hallway. The entire incident in the hallway lasted no more than five minutes.
As the presentment agency concedes, there was no basis for the trial court to have made separate factual findings as to six *712 separate misdemeanor offenses based on appellant’s contact with the complaining witness’s breasts and buttocks, because the offending conduct involved “a single, uninterrupted occurrence” (People v Alonzo, 16 NY3d 267, 270 [2011]). Accordingly, we dismiss one count each of sexual abuse in the second and third degrees and forcible touching. Nonetheless, the totality of appellant’s course of conduct, and his statements to the complaining witness, support the inference that he acted for the purpose of sexual gratification (see e.g. Matter of Najee A., 26 AD3d 258 [1st Dept 2006], lv denied 7 NY3d 703 [2006]; Matter of Kenny O., 276 AD2d 271 [1st Dept 2000], lv denied 96 NY2d 701 [2001]). The court’s findings that appellant committed an act, that, if committed by an adult, would constitute a crime, was, therefore, based on legally sufficient evidence and not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]).
A juvenile delinquency adjudication, however, requires both a determination that the juvenile committed an act, that, if committed by an adult, would constitute a crime and a showing, by the preponderance of the evidence, that the juvenile needs supervision, treatment or confinement (Family Ct Act §§ 345.1, 350.3, 352.1). Although the seriousness of the juvenile’s acts is an extremely important factor in determining an appropriate disposition (see Matter of Alberto R., 84 AD3d 593 [1st Dept 2011]), it is not the only factor. The disposition is not supposed to punish a child as an adult, but provide effective intervention to “positively impact the lives of troubled young people while protecting the public” (Matter of Robert J., 2 NY3d 339, 346 [2004]).
While the trial court properly found that appellant committed a delinquent act, there was insufficient support for its decision that appellant needed supervision, treatment or confinement (Family Ct Act §§ 352.1, 350.3). In addition, 12 months’ probation was not the least restrictive available alternative that would have adequately served the needs of appellant and society (Family Ct Act § 352.2; Matter of Justin Charles H., 9 AD3d 316 [1st Dept 2004]).
This was appellant’s first and only contact with the juvenile justice system both before and after the incident. Although appellant had 24 absences during the 2010-2011 school year, by the fall of 2011, when the hearing took place, his academic performance had improved and he only had four absences, two of which were attributable to court appearances in connection with the underlying petition. The November 2011 probation report indicates that prior to the incident, appellant had also *713 been associating with some “negative peers” at school, but after the petition was brought, he stopped contact with them. Appellant had no reported history of illegal drug or alcohol use, he was not involved with a gang, and his mother reported that although he sometimes failed do his chores, he adhered to his curfew. She described him as being nice and respectful towards the people in his community which he enjoys. Letters from appellant’s school social worker and two of his teachers confirmed his progress in school (80 average) and his regular attendance.
Appellant has been compliant with all court orders and requirements, including the temporary order of protection issued in favor of the complaining witness who attends school with him. He has kept all scheduled court appearances and been cooperative with the probation officer and psychologist. Appellant’s mother was present at all court appearances with appellant and she too has been fully cooperative with the probation officer and the psychologist.
Dr. Abies of the Bronx Psychiatric Center reported to the court that appellant’s mother agreed that her son would benefit from a program, although she was unsure what had actually transpired at school. Dr. Abies also reported that both appellant and his mother “indicated they would make certain [appellant] attends all scheduled treatment appointments.” Dr. Abies recommended a “minimum of 18 months probation supervision” for proper assessment and completion of the program that he offered.
Prior to adjudicating appellant a juvenile delinquent, appellant’s counsel moved for an adjournment in contemplation of dismissal with conditions, as well as other less restrictive alternatives to probation. That application was denied, and the court subsequently adjudicated appellant a juvenile delinquent, imposing a disposition of 12 months’ probation. The court stated that appellant needs the “services provided by probation and the supervision provided by Dr. Abies,” without any explanation why, if the court believed this to be so, it then deviated from Dr. Abies’ recommended probation period. The dissent’s conclusion, that Dr. Abies’ program can be completed in 12 months, is contrary to what Dr. Abies actually reported.[1] The 12 months of probation is not related to anything in this record. In any event, given appellant and his mother’s willingness to voluntarily par *714 ticipate in a recommended program, a lengthy period of court supervision is unnecessary. Monitoring appellant’s voluntary compliance could have been accomplished under an adjournment in contemplation of dismissal (see Matter of Tyttus D., 107 AD3d 404 [1st Dept 2013]).
In deciding the least restrictive alternative, the court must also consider the child’s background, the stability of the child’s home life, the adult supervision available in the home, the child’s age at the time of the incident and the progress the child has made since the incident (see Matter of Besjon B., 99 AD3d 526 [1st Dept 2012]; Matter of Tyvan B., 84 AD3d 462 [1st Dept 2011]; Matter of Julian O., 80 AD3d 525 [1st Dept 2011]).
Here, it is conceded by all parties that the trial court, in weighing the seriousness of the acts committed, improperly multiplied them in a manner that was contrary to law (People v Alonzo, 16 NY3d at 270). Taking into consideration the serious nature of the remaining charges, and balancing them against this child’s stable home life, appropriate parental support and guidance, lack of any prior or subsequent history of contact with the juvenile justice system, and great strides in school performance in the almost 14-month period since the underlying offense, coupled with his full compliance with all court orders and proceedings, and his very young age at the time of the incident, the trial court’s disposition was not the least restrictive that could have been ordered (see Matter of Jonnevin B., 93 AD3d 572 [1st Dept 2012]).
An adjournment in contemplation of dismissal, conditioned on appellant’s participation in an appropriate program, school attendance and compliance with a permanent order of protection in favor of the complainant, would have sufficed to serve the needs of appellant and society (see e.g. Family Ct Act § 352.2 [2] [a]; Matter of Osriel L., 94 AD3d 523 [1st Dept 2012]). Concur — Acosta, Renwick and Gische, JJ.

. Twelve months could not have accommodated the assessment process, which could take up to three months to complete, and the treatment itself, which is a group setting meeting once a week for nine months. According to Dr. Abies, it is necessary to factor in school schedules and holidays, and the doctor’s own responsibilities of conducting interviews and preparing reports to *714 the court. Thus, based on the doctor’s own experience, he estimated that the entire process would take a “minimum” of 18 months.